UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

Brian Bohart,

                    Plaintiff,                    10-CV-6503

          v.                                      **DECISION**
                                                  **and ORDER**
Michael J. Astrue,
Commissioner of Social Security

                    Defendant.
_____

## <u>Introduction</u>

Plaintiff Brian Bohart ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act") claiming that the Commissioner of Social Security ("Commissioner") improperly denied Plaintiff both Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

Plaintiff moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) ("Rule 12(c)") on the grounds that the decision of the Administrative Law Judge, F. Patrick Flanagan ("ALJ"), was not supported by substantial evidence in the record. The Commissioner cross-moves for judgment on the pleadings pursuant to Rule 12(c) on the grounds that the ALJ's decision was grounded in substantial evidence and was based on the correct legal standards.

For the reasons set forth herein, I find that the decision of the Commissioner is not supported by substantial evidence in the record and is contrary to the applicable legal standards. I

1

therefore deny the Commissioner's motion for judgment on the pleadings, grant Plaintiff's motion for judgment on the pleadings, and remand this claim to the Commissioner for further proceedings consistent with this decision.

## Background

On June 8, 2007, Plaintiff filed a Title II application for a period of disability and DIB. Plaintiff also filed a Title XVI application for SSI on the same date. In both applications, Plaintiff alleged a disability beginning on January 15, 2006, due to complications from mesenchymal chondrosarcoma, right shoulder, and herniated discs in his neck with pinched nerves. (Tr. at 125).[1] Plaintiff's claims were initially denied on September 10, 2007. Thereafter, Plaintiff filed a written request for a hearing on October 24, 2007. The Plaintiff appeared and testified at a hearing held on September 16, 2009 in Corning, NY.  Katie Bohart, Plaintiff's wife, and Peter Gordon, Esq., Plaintiff's attorney, both appeared at the hearing.

In a decision dated October 7, 2009, the ALJ concluded that Plaintiff was "disabled" within the meaning of the Social Security Act from January 15, 2006 through September 29, 2008. However, beginning September 30, 2008, the ALJ determined that Plaintiff experienced medical improvement related to his ability to work, and

---

[1]"Tr." refers to the pages of the administrative transcript filed as part of the Commissioner's answer.

found that Plaintiff has been able to perform substantial gainful activity from September 30, 2008 through the date of the decision. The ALJ's decision became the final decision of the Commissioner when the Social Security Appeals Council denied review on July 6, 2010.  On July 29, 2010, Plaintiff filed this action.

## Discussion

## 1. Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to review claims based on the denial of Social Security benefits. Matthews v. Eldridge, 424 U.S. 319, 320, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).  The section directs the district court to accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938).  Section 405(g) therefore limits this Court's review to two main inquiries: (i) whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole, and (ii) whether the Commissioner's conclusions are based upon an erroneous legal standard.  Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003).

Plaintiff and the Commissioner both move for judgment on the pleadings pursuant to Rule 12(c). Section 405(g) states that the

3

district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2009). Judgment on the pleadings may be granted under Rule 12(c) where the material facts are not in dispute and where judgment on the merits is possible given the contents of the pleadings. <u>Sellers v. M.C. Floor Crafters, Inc.</u>, 842 F.2d 639, 642 (2d Cir. 1988). If, after reviewing the record, the Court is convinced that Plaintiff has not set forth a plausible claim for relief, judgment on the pleadings may be appropriate. <u>See</u> <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A district court can order payment of Social Security disability benefits when the record contains persuasive proof of disability and remand for additional evidentiary proceedings would serve no further purpose. <u>See</u> <u>Carroll v. Secretary of Health and Human Serv.</u>, 705 F.2d 638, 644 (2d Cir. 1981).

After reviewing the entire record, this Court finds that the ALJ's decision is not supported by substantial evidence and is not in accordance with the appropriate legal standards. This Court further finds that there is substantial evidence in the record to support Plaintiff's claim for DIB and SSI. Therefore, the Commissioner's motion for judgment on the pleadings is denied, Plaintiff's motion is granted and the Court remands the claim to

the Commissioner for further proceedings consistent with this decision.

## II. Standard for Entitlement to Benefits

A disability, under the Social Security Act, is defined as the "inability to engage in substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . ." 42 U.S.C. § 1382c (a)(3)(A) (concerning SSI payments). Someone is considered "under a disability" if his impairment is so severe that he is both unable to do his previous work and unable to engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c (a)(3)(B).

"Substantial gainful work" is "work that exists in significant numbers either in the region where the individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A) and 1382c (a)(3)(B). Work can be considered "substantial" even if it is done on a part-time basis, if less money is earned, or if workplace responsibilities are decreased from previous employment. 20 C.F.R. §§ 404.1572(a) and 416.972(a). Work can be considered "gainful" if it is the kind of work that is usually done for profit. 20 C.F.R. §§ 404.1572(b) and 416.972(b).

In determining whether or not an individual is disabled, the Social Security Administration requires the ALJ to engage in the following five-step evaluation:

(1) if the claimant is performing substantial gainful work, he is not disabled;

(2) if the claimant is not performing substantial gainful work, his impairment(s) must be "severe" before he can be found disabled;

(3) if the claimant is not performing substantial gainful work and has a "severe" impairment(s) that has lasted or is expected to last for a continuous period of at least 12 months, and if the impairment(s) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is presumed disabled without further inquiry;

(4) if the claimant's impairment(s) do not meet or medically equal a listed impairment, the next inquiry is whether the claimant's impairment(s) prevent him from doing his past relevant work, if not, he is disabled;

(5) if the claimant's impairment(s) prevent him from performing his past relevant work, and other work exists in significant numbers in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors, he is not disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 419.920(a)(4)(i)-(v) (2009).

After finding that the Plaintiff met the insured status requirements of the Social Security Act as of January 15, 2006, the ALJ determined that (i) Plaintiff had not engaged in substantial gainful activity since January 15, 2006, the alleged onset date, (ii) the Plaintiff's impairments, status post resection of mesenchymal chondrosarcoma of the right shoulder and herniated disc of the cervical spine status post anterior cervical discectomy and

fusion, were "severe" under 20 C.F.R. § 404.1520(c), (iii) the Plaintiff's impairments during his period of disability (from January 15, 2006 through September 29, 2008) did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, (iv) from January 15, 2006 through September 29, 2008, the claimant had the RFC to perform less than the full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), and (v) from January 15, 2006 through September 29, 2008, the claimant was unable to perform his past relevant work as a security guard, and given his age, education, work experience, and RFC, there were no jobs that existed in significant numbers in the national economy that the claimant could have performed.

The ALJ also determined that Plaintiff experienced a medical improvement related to his ability to work on September 30, 2008. Therefore, as of that date, the ALJ determined the Plaintiff was no longer disabled under the Act. The ALJ found that Plaintiff could perform "basically the full range of light work" as codified in 20 C.F.R. §§ 404.1567(b) and 416.967(b) and that Plaintiff was capable of performing his past relevant work as a security guard.

**III.  The ALJ's decision to end Plaintiff's disability on September 30, 2008 is not supported by substantial evidence contained in the record and is erroneous.**

A. *The ALJ failed to provide adequate support for his finding that the Plaintiff's statements concerning the limiting effects of his impairments after September 30, 2008 were not credible.*

In altering Plaintiff's RFC determination from "less than sedentary" to "basically the full range of light work," the ALJ determined that the Plaintiff's statements at the hearing regarding the "intensity, persistence, and limiting effects of these symptoms" were "not credible beginning on September 30, 2008." (Tr. at 45). The ALJ reasoned that Plaintiff's statements were inconsistent with the medical and other evidence and, in particular, he relied on a medical report from Dr. Damron's nurse, Mattie VanGlynn. (Tr. at 45).

The ALJ made Plaintiff's credibility determination based partially on his visual observations of Plaintiff at the hearing, and his interpretation of Plaintiff's testimony as it related to his medical condition. Along with the ALJ's observations from the hearing was a brief, unattributed sentence regarding a progress note, from his treating physician Dr. Damron in September 2008, that Plaintiff "was doing well and had full range of motion [in his right shoulder]." Id. It should be noted that this opinion from Dr. Damron was nearly a year before the hearing.

First, the ALJ noted that the Plaintiff stated that he could lift five pounds on a good day, "but not on a constant basis." Id. Second, the ALJ noted Plaintiff's complaints of "severe pain" and "inability to raise his right arm overhead." Id. The ALJ compared these statements to Plaintiff's ability to raise his arms to "about shoulder level" while going through security, while demonstrating

no visible discomfort. Id. Finally, the ALJ refers to Plaintiff's ability to "sit throughout the testimony" until his wife appeared to testify, implying that Plaintiff's ability to concentrate was not as deteriorated as he had suggested at the hearing. See Id.

In determining Plaintiff's credibility, the ALJ also relied on an August 2009 examination conducted by Dr. Damron's nurse practitioner, Mattie VanGlynn. At this examination, Plaintiff reported that he was not taking any pain medication, despite being in pain. The nurse also noted that the Plaintiff could not work a job that required him to use his arm above shoulder level, and would "not be able to sit for an extended period of time if it required use of his shoulder or neck." (Tr. at 397). The ALJ relied upon this report to support his conclusion that Plaintiff could return to his past relevant work as a security guard. Further, the ALJ found that a medical questionnaire completed by Dr. Damron in August 2009, stating that Plaintiff could only stand and/or walk for less than one hour and sit for less than four hours during an average workday, was "inconsistent with his treatment notes as well as with the contemporaneous opinion [from his nurse practitioner] detailed above," and was therefore entitled to little weight. (Tr. 45-46).

Where disability claims are based on pain-related symptoms, the SSA will "consider all [of a claimant's] symptoms, including pain, and the extent to which [these] symptoms can reasonably be

accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a) (2009). "Objective medical evidence" includes "medical signs and laboratory findings." Id. Medical signs include "anatomical, physiological, or psychological abnormalities which can be observed . . ." Id. "Other evidence" includes a claimant's testimony regarding their symptoms where objective medical evidence does not cover the severity of the impairment. Id. If an ALJ believes that the claimant's reported symptoms are in excess of objective medical evidence, the ALJ considers the following: (i) a claimant's daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of medication a claimant takes to alleviate pain or other symptoms; (v) non-pharmacological other treatments the claimant has sought for relief of symptoms; (vi) any other measures a claimant has used to alleviate symptoms; (vii) and other factors concerning a claimant's functional limitations and restrictions caused by the reported symptoms.

The ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." (Tr. at 45). Under SSR 96-7p, where the existence of a medically determinable physical or mental impairment that could reasonably be expected to cause a claimant's symptoms has been

established, if the ALJ believes that the claimant's symptoms are not fully supported by objective evidence, the ALJ must evaluate the credibility of the claimant to determine "the intensity, persistence, and functionally limiting effects of the symptoms" relating to a claimant's ability to work. SSR 96-7p. This ruling directs an ALJ to gather information to assess credibility, consider the entire case record, consider the above listed factors and "give specific reasons for the weight given to the individual's statements." Id.

The ALJ states that, in September 2008, Dr. Damron "noted that [Plaintiff] was doing well and had full range of motion [of his right shoulder]." (Tr. at 45). Based on this report, the ALJ determined that Plaintiff experienced a medical improvement. (Tr. at 344). However, the report from Plaintiff's next visit to Dr. Damron in June 2009 states that Plaintiff's range of motion on the right shoulder for forward flexion and abduction was limited to 90 degrees. (Tr. at 342). This later report undermines the ALJ's claim, particularly because the "medical improvement" was predicated on a full range of motion for Plaintiff's shoulder. As SSR 96-7p notes, "the lack of consistency between an individual's statements and other statements that he or she has made at other times does not necessarily mean that the individual's statements are not credible. Symptoms may vary . . . ." Here, the ALJ made no attempt to explain this inconsistency, and simply selected an

11

earlier medical report to support his finding of a light RFC. An
ALJ cannot selectively choose the only portions of a medical
opinion that support his determination, while ignoring others. See
Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004) (citing
Switzer v. Heckler, 742 F.2d 382, 385-86 (7th Cir. 1984)). After
noting the finding made by Dr. Damron following the June 2009
visit, the Plaintiff's "medical improvement" is not supported by
substantial evidence.

The ALJ also made several observations of Plaintiff at the
hearing to support his finding that Plaintiff's statements
regarding his symptoms were not credible after September 30, 2008.
The ALJ first noted Plaintiff's statement that he would be able to
lift five pounds on a good day (which he had roughly five of the
seven days of the week), but not on a constant basis. Despite this,
Plaintiff was still able to care for his one-year-old daughter, who
probably weighs "more than five pounds." (Tr. at 45). However,
Plaintiff did not provide this estimate – it was the ALJ's
conclusion that "the typical one-year old child weighs more than
five pounds." Id. The fact that Plaintiff could lift his child does
not warrant the conclusion that he was not disabled, nor that his
testimony was not credible. Plaintiff reports that he is still able
to lift with his unaffected left arm, which is consistent with his
testimony that "[he] can't even pick up [his] son with [his] right
arm." Id. At the hearing, Plaintiff stated that he would not be

able to lift five or ten pounds for 15 or 20 minutes per hour, every hour. (Tr. at 21-22). While the ALJ may perceive that statement as inconsistent with Plaintiff's childcare duties, his finding of an inconsistency is not supported by the medical evidence, which indicates that his right arm was affected by the removal of the mesenchymal chondrosarcoma of the right shoulder. This finding, therefore, is not supported by substantial evidence.

The ALJ states that the Plaintiff "does not require narcotic medication or injections to make his symptoms bearable." (Tr. at 45). Plaintiff reported that the medications helped to alleviate his pain for a period, but decreased in effectiveness over time. (Tr. at 15). Plaintiff also testified that the pain medication "barely helped the pain at all but [made me want] nothing but want to sleep and made me want to eat a lot." (Tr. at 16). Plaintiff further stated that, while on his pain medications, he "probably wouldn't be able to take care of [his] son." Id. Therefore, the benefits of the strong pain medication were outweighed by the unfavorable side effects which may very well provide a sufficient justification for discontinuing a course of pain medication. "[A]ttempts by the individual to obtain relief [with] a variety of treatment modalities in an attempt to find one that . . . does not have side effects generally lend support to an individual's allegations of intense and persistent symptoms." Monette v. Astrue, 269 F.Appx. 109, 2008 WL 695370, at *4 (2d Cir. March 14,

2008)(quoting SSR 96-7p). The record indicates that Plaintiff informed a nurse at a pain management office in July 2007, that oxycodone was "not helping." (Tr. at 300). This is consistent with his hearing testimony.   As such, the ALJ's finding that the Plaintiff lacked credibility because he was not taking pain medication at the time of the hearing is not supported by substantial evidence.

The ALJ seems to make much of the following observation during the hearing:

> "although the claimant complained of severe pain and an inability to raise his right arm overhead and difficulty concentrating, he maintained attention and answered appropriately at the hearing, and as he entered the hearing room and was screened by the security guard he readily lifted up both arms to *about* shoulder level when he was searched for weapons and displayed no signs of increased discomfort during this maneuver."

(Tr. at 45, emphasis mine). The ALJ targets Plaintiff's ability to raise his arms without discomfort and his ability to sit and concentrate. It is unclear how the ALJ is capable of making any substantial determinations regarding Plaintiff's ability to concentrate after sitting through a hearing lasting 35 minutes, particularly when a significant portion of the hearing was an interview with Plaintiff's wife (Tr. at 26-31); Plaintiff's testimony was relatively brief, lasting approximately 20 minutes.

The ALJ's conclusion that Plaintiff was not restricted by any discomfort when raising his arms at the security check is an unwarranted, gratuitous conclusion, not supported by the medical

14

evidence in the record. The fact that the ALJ observed the Plaintiff able to raise his arms "about shoulder level" is consistent with the medical evidence in the record, and the Plaintiff's testimony that he was limited to raising his arms to shoulder level.  The ALJ erred in questioning the Plaintiff's credibility based on this observation since the Plaintiff's conduct was consistent with the medical evidence in the record.  <u>See</u> <u>Sims v. Barnhart</u>, 442 F3d 536 (7th Cir. 2006) (the reviewing court may disturb the credibility determination if the trier of fact grounds his credibility finding based on an unreasonable or unsupported observation or argument).

The ALJ's reliance on an August 2009 examination conducted by Dr. Damron's nurse practitioner, Mattie VanGlynn, is not the opinion of a treating physician since it was not adopted as such by Dr. Damron. However, the conclusion of her report supports Plaintiff's disability. Ms. VanGlynn noted that Plaintiff would "not be able to sit for an extended period of time if it required use of his shoulder or neck." (Tr. at 397). This is what he would be required to do as a security guard. As such, Ms. VanGlynn's report, unlike ALJ's conclusion, is inconsistent with a light RFC. The conclusion that the ALJ reaches by relying on Ms. VanGlynn's report is not supported by the substantial medical evidence in the record.

B. *The ALJ failed to apply the Treating Physician Rule.*

Plaintiff submits that the ALJ erred in failing to give presumptive weight and/or significant weight to the opinion of the treating doctor, Dr. Damron. (Brief for Plaintiff at 4). The Court agrees. In the August 2009 report, Dr. Damron opined that Plaintiff could stand and/or walk less than one hour and sit less than four hours in an eight hour workday. (Tr. at 398). Dr. Damron further opines that Plaintiff needs to rest frequently without restriction. Id. These abilities are consistent with a less than sedentary RFC. 20 C.F.R. § 404.1567. This report supports the conclusion that Plaintiff continued to be disabled after September 30, 2008. When determining the nature and severity of a claimant's impairments, the SSA recognizes a "treating physician rule" which gives deference to the physician who has provided the primary treatment for the patient. 20 C.F.R. § 404.1527(d)(2); Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003). Furthermore, if the ALJ does not give the treating physician controlling weight, he must provide "good reasons" for not doing so. Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

When determining whether a treating physician's opinion should be given controlling weight, the ALJ must evaluate: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a

whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Id. at 503 (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)).

In this case, the ALJ did not provide sufficient support for his decision to give Dr. Damron's opinion little weight. In his decision, the ALJ states that Dr. Damron's opinion is "inconsistent with his treatment notes as well as with the contemporaneous opinion" of his nurse from a few days prior. (Tr. at 45-46). The ALJ offers no explanation of how the finding is inconsistent and why it is entitled to less weight. An ALJ "may not ignore an entire line of evidence that is contrary to [his] findings." Zurawski v. Halter, 245 F.3d 881, 888 (7th Cir. 2001) (citing Henderson v. Apfel, 1769 F.3d 507, 514 (7th Cir. 1999)). By failing to specify the inconsistencies (and ignoring other factors), the ALJ fails to consider the above factors as required by 20 C.F.R. § 404.1527(d)(2).

Plaintiff's course of treatment with Dr. Damron can reasonably be described as extensive. Dr. Damron evaluated Plaintiff at least 10 times between March 2006 and August 2009. (Tr. at 218-37, 342-51, 396-97). There is substantial evidence in Plaintiff's testimony that corroborates Dr. Damron's report. (Tr. at 13-25). The report generated by Dr. Damron's nurse prior to the questionnaire corroborates Plaintiff's difficulties with sitting for extended periods of time. (Tr. at 396). Furthermore, Dr. Damron is a

17

specialist. (Tr. at 241-43). In failing to take into account the above factors, and in failing to specify particular inconsistencies and provide good reasons for rejecting Dr. Damron's opinion, the ALJ committed legal error.

C. *The ALJ erred in finding that the Plaintiff could perform the full range of light work.*

This Court finds that the opinions of Plaintiff's treating physicians, along with other medical evidence, provide substantial evidence in the record that the Plaintiff is disabled as a result of complications from the resection of mesenchymal chondrosarcoma and Plaintiff's herniated disc of the cervical spine status post anterior cervical discectomy and fusion, and cannot perform sedentary work.

To be entitled to disability benefits, one must have a medically determinable impairment that is expected to result in death or last for a continuous period of time greater than twelve months, limiting one's functional capacity to do one's past relevant work or other work that exists in the national economy. 42 U.S.C. §§ 423(d) and 1382(a)(3). The ALJ determined that Plaintiff's impairments were severe under 20 C.F.R. §§ 404.1520(c) and 416.920(c). Nonetheless, as stated, the ALJ determined that Plaintiff possessed a light RFC following "medical improvement" in his condition on September 30, 2008. (Tr. at 43). The Court determines that the ALJ's decision was not supported by substantial evidence, and was not based on the applicable legal standards.

18

In determining that Plaintiff possessed a light RFC, the ALJ erroneously questioned Plaintiff's credibility, as discussed above. The ALJ failed to give the opinion of Plaintiff's treating physician controlling weight. Instead, the ALJ erroneously relies on a report from Dr. Damron in September 2008, almost a year before the hearing stating that Plaintiff cannot sit for more than four hours at a time. (Tr. at 5-31, 43, 398). It is error for the ALJ to base his decision on an earlier less favorable report from the treating physician, and then effectively ignore a more current (favorable) opinion from the same doctor. See Robinson v. Barnhart, supra.

This Court accepts as controlling the most recent opinion of Plaintiff's treating physician, Dr. Damron, as it appears in the medical questionnaire from August 2009. In this questionnaire, Dr. Damson opined that Plaintiff could stand and/or walk less than one hour and sit less than four hours in an eight hour workday. (Tr. at 398). Dr. Damron further opines that Plaintiff would require complete freedom to rest frequently without restriction. Id. These abilities are consistent with a less than sedentary RFC. 20 C.F.R. § 404.1567.

This Court accepts the ALJ's findings that Plaintiff had a less than sedentary RFC from January 15, 2006 through September 29, 2008 (Tr. at 41), that Plaintiff was unable to perform past relevant work during that time period, that there were no jobs that

19

existed in significant numbers in the national economy that Plaintiff could have performed. According to the most recent opinion from Dr. Damron, Plaintiff's RFC continued to be less than sedentary through the date of the hearing. Accordingly, this Court finds that Plaintiff was disabled within the meaning of the Act.

### Conclusion

The ALJ's finding that Plaintiff's condition improved as of September 30, 2008 was not supported upon substantial evidence in the record.  I find that Plaintiff's disability continued beyond September 30, 2008 which is supported by substantial evidence in the record. The record contains substantial evidence supporting Plaintiff's claim of disability beyond September 30, 2008, such that further evidentiary proceedings would serve no purpose. I therefore grant judgment on the pleadings in favor of the Plaintiff and remand the case to the Social Security Administration for calculation and payment of benefits.

**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

DATED: June 23, 2011
       Rochester, New York